```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| United States of America<br><br>**Plaintiff**<br><br>v.<br><br>Maywilliams Jose Salazar-Salazar [5]<br>Andrys Mata-Salazar [6]<br>Marco Antonio Romero-Romero [18]<br>Angel Placido Manta-Salazar [24]<br><br>**Defendants** | **CIVIL NO. 20-382** (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is co-defendants Maywilliams Jose Salazar-Salazar, Andrys Mata-Salazar, Marco Antonio Romero-Romero, and Angel Placido Manta-Salazar's (collectively "Defendants") *Motion to Suppress for Destruction of Evidence* ("*Motion to Suppress*"). (Docket No. 616). Defendants request that the Court bar testimony and evidence related to the alleged bulk narcotics that were seized and destroyed in this case. Id. The Government filed a *Response in Opposition* arguing that Defendants have not met their burden to establish that suppression is warranted. (Docket No. 650). Lastly, Defendants filed a *Reply* (Docket No. 651). For the reasons discussed below, the Court **DENIES** Defendant's *Motion to Suppress.*

## I.   FACTUAL BACKGROUND

On November 1, 2020, Defendants were arrested at sea while on board one of two vessels, namely *Los Ojos de Mi Negra* or the *Frania I*. On November 6, 2020, an Indictment was filed against Defendants, and 26 other co-defendants, charging them with Conspiracy to Possess with Intent to Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. 70503(a)(3), 70506(a) and (b) ("Count I"); Conspiracy to Import a Controlled Substance into the United States in violation of 21 U.S.C. 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 ("Count II"); and Attempt to Import a Controlled Substance into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 ("Count III"). (Docket No. 22).

The Border Patrol's Report of Apprehension or Seizure states that 20 bales of cocaine, totaling 679.2 kilograms, were seized on **November 1, 2020**. (Docket No. 616-1). Per the Department of Homeland Security's ("DHS") Order to Destroy, the destruction of the seized cocaine was authorized on **December 7, 2020** and the destruction ultimately occurred on **January 20, 2021**. (Docket No. 616-4).

On April 25, 2021, co-defendant Maywilliams Jose Salazar-Salazar filed a motion seeking to preserve evidence, specifically including the 20 bales of cocaine that were allegedly recovered.

(Docket No. 307 at 4). On May 14, 2021, the Government responded, stating that "the narcotics seized in this matter have been sent for analysis. To date, no narcotics have been sent for destruction." (Docket No. 328 at 2). However, on May 26, 2021, the Government filed an *Informative Motion to Correct* notifying the Court that after filing the response, the Government's counsel "learned that the bulk narcotics were destroyed in or around January 2021." (Docket No. 335 ¶ 5).

Defendants subsequently filed a *Motion to Suppress for Destruction of Evidence and/or an Evidentiary Hearing* ("*Motion to Suppress*"). (Docket No. 616). Defendants claim that their arrest occurred pursuant to a "sting operation," whereby the Government had control over the type and amount of contraband. Id. at 6, 14. Furthermore, Defendants argue the Government did not follow regulations and violated Defendants' due process rights by failing to provide notice prior to the destruction. Id. at 10-11. Defendants posit that the destruction of evidence precluded them from conducting "DNA trace testing on the exterior and interior packaging" which would uncover highly probative and exculpatory evidence as to who handled the contraband. Id. at 13-14.

The United States filed a *Response in Opposition* asserting that Defendants misconstrue the record. (Docket No. 650). First, the United States contests Defendants claim that the Government

provided and had control over the contraband in a sting operation. The United States asserts that while a Confidential Human Source ("CHS") and undercover agent were involved in the transportation of the cocaine, the Government did not provide the seized narcotics. Id. at 3. The United States also avers that any additional testing of the packaging to determine ownership of the narcotics, as well as the type, purity, and amount of the contraband, would be *inculpatory*, rather than exculpatory. Id. at 7-8. Lastly, the United States avers that it did not act in bad faith because there is no statutory or regulatory requirement to notify defendants prior to the destruction of bulk narcotics. Id. at 10. Lastly, Defendants filed a *Reply*. (Docket No. 651).

## II.   APPLICABLE LAW

### A. Evidentiary Hearings on Motions to Suppress

There is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013) (citation omitted). A hearing must be held only under certain circumstances, such as "if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." Id. (quotation omitted). Most notably, "the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id.

**B. Procedure for Destroying Bulk Evidence**

21 U.S.C. § 881(f)(1) provides that "[a]ll controlled substances in schedule I or II that are possessed, transferred, sold, or offered for sale in violation of the provisions of this subchapter ...shall be deemed contraband and seized and summarily forfeited to the United States." Furthermore, this statute authorizes the Attorney General to "direct the destruction of all controlled substances in schedule I or II seized for violation of this subchapter ... under such circumstances as the Attorney General may deem necessary." Id. § 881(f)(2).

Additionally, 28 CFR 50.21(e) establishes the procedures for the destruction of contraband drug evidence in the custody of Federal law enforcement.[1] Specifically, when either the Federal Bureau of Investigation ("FBI") or Drug Enforcement Administration ("DEA") seizes contraband drug substances in excess of the threshold amount established by the regulation, the Agency with custody shall:

> (1) **Immediately notify the appropriate U.S. Attorney, Assistant U.S. Attorney, or the responsible state/local prosecutor that the amount of seized contraband drug exceeding the threshold amount and its packaging, will be destroyed <u>after sixty days from the date notice is provided of the seizures</u>, unless the**

---

[1] It is worth noting that the purpose of this regulation is to "prevent the warehousing of large quantities of seized contraband drugs which are unnecessary for due process in criminal cases" and present "inordinate security and storage problems which create additional economic burdens" on the United States. 28 C.F.R. § 50.21(c).

Case 3:20-cr-00382-RAM   Document 805   Filed 12/21/22   Page 6 of 12

Crim. No. 20-382 (5, 6, 18, 24) (RAM)                                  6

**agency providing notice is requested in writing by the authority receiving notice not to destroy the excess contraband drug**; and

(2) Assure that appropriate tests of samples of the drug are conducted to determined the chemical nature of the contraband substance and its weight sufficient to serve as evidence before the trial courts of that jurisdiction; and

(3) Photographically depict, and if requested by the appropriate prosecutorial authority, videotape, the contraband drugs as originally packaged or an appropriate display of the seized contraband drugs so as to create evidentiary exhibits for use at trial; and

(4) Isolate and retain the appropriate threshold amounts of contraband drug evidence when an amount greater than the appropriate threshold amount has been seized, or when less than the appropriate threshold amounts of contraband drugs have been seized, the entire amount of the seizure, with the exception of marijuana, for which a representative sample shall be retained; and

(5) Maintain the retained portions of the contraband drugs until the evidence is no longer required for legal proceedings, at which time it may be destroyed, **first having obtained consent of the U.S. Attorney, an Assistant U.S. Attorney**, or the responsible state/local prosecutor;

(6) Notify the appropriate U.S. Attorney, Assistant U.S. Attorney, or the responsible state/local prosecutor to obtain consent to destroy the retained amount or representative sample whenever the related suspect(s) has been a fugitive from justice for a period of five years. An exemplar sufficient for testing will be retained consistent with this section.

28 C.F.R. § 50.21(e). C.F.R. § 50.21(d)(4)(ii)-(iii) defines a "threshold amount" as ten kilograms "of a mixture or substance containing a detectable amount of" cocaine. Upon being notified by the FBI or the DEA of an intent to destroy excess contraband drugs, the U.S. Attorney (or equivalent) may either agree to the destruction or request an exception to the destruction policy. Id. § 50.21(f).

**C. Suppressing Destroyed Evidence**

Defendants seeking to suppress evidence formerly in the government's possession "must show that the government, in failing to preserve the evidence, (1) acted in bad faith when it destroyed evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable." United States v. Femia, 9 F.3d 990, 993-94 (1st Cir. 1993). Generally, "in missing evidence cases, the presence or **absence of good or bad faith by the government will be dispositive**." Id. at 994. The First Circuit has held that even when evidence is destroyed intentionally or because of gross negligence, this is insufficient to satisfy the requirement of bad faith. *See* United States v. Garza, 435 F.3d 73, 75 (1st Cir. 2006) (citing United States v. Gallant, 25 F.3d 36, 39 n.2 (1st Cir. 1994); Femia, 9 F.3d at 995). Rather, defendants **"must show 'independent evidence that the [government] was somehow improperly motivated.'"** Id. (quoting Gallant, 25 F.3d at 39 n.2) (emphasis added).

However, "a bad faith showing is not required when the evidence is apparently exculpatory[,]" *i.e.* if it is "apparent that the evidence is exculpatory *before* it is lost or destroyed[.]" Olszewski v. Spencer, 466 F.3d 47, 56 (1st Cir. 2006) (citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988)) (emphasis in original). *Cf* Youngblood, 488 U.S. at 58, ("unless a criminal defendant can show bad faith on the part of the [government], failure to preserve **potentially useful evidence** does not constitute a denial of due process of law.").

### III. DISCUSSION

In order to meet their burden and suppress the destroyed bulk contraband, Defendants must show either that the Government acted in bad faith or that the destroyed contraband was apparently exculpatory.

**A. Defendants have not evinced bad faith**

Defendants proffer two main arguments to establish bad faith: (1) the destruction was inherently bad faith because the arrest was a sting operation whereby the Government had control over the nature an amount of the contraband; and/or (2) the Government did not comply with its statutory and regulatory obligations requiring it to provide notice before destroying bulk evidence. (Docket No. 616 at 6-14).

First, Defendant's **only** evidence to support their claim that a sting operation occurred is the DEA's November 20, 2020 "Report

Case 3:20-cr-00382-RAM   Document 805   Filed 12/21/22   Page 9 of 12

Crim. No. 20-382 (5, 6, 18, 24) (RAM)                                    9

of Drug Property Collected, Purchased, or Seized" that reflects at Box 10 that the bulk shipment was obtained by way of a "Stockpile Reverse Undercover." (Docket No. 616-5). To interpret these three words as meaning that a sting operation occurred where the Government controlled the nature and amount of contraband requires significant speculation and leaps of logic. The record is insufficient to establish that the United States had such significant control over the contraband. Furthermore, Defendants fail to point to any case law or authorities to establish that such alleged control over the contraband would suffice to establish bad faith. *See* Local Rules 7(a); 112.

Second, as to the Government's compliance with regulations governing the destruction of evidence, Defendants misinterpret the applicable requirements. Here, the seized contraband was destroyed because the amount seized exceeded the threshold amount pursuant to 28 C.F.R. 50.21. As the First Circuit has highlighted, the fact "that the evidence was destroyed in the course of implementing routine procedures militates against a finding of bad faith." Garza, 435 F.3d at 76. Defendants claim that they were not given notice prior to the destruction of the seized narcotics. 28 C.F.R. 50.21 only requires that the agency (*i.e.,* the FBI or DEA) with custody over the seized contraband "**notify the appropriate U.S. Attorney, Assistant U.S. Attorney,** or the responsible state/local prosecutor that the amount of seized contraband drug exceeding the

Case 3:20-cr-00382-RAM   Document 805   Filed 12/21/22   Page 10 of 12

Crim. No. 20-382 (5, 6, 18, 24) (RAM)                                    10

threshold amount and its packaging, will be destroyed after sixty days from the date notice is provided of the seizures." (emphasis added). Notably, the regulation **does not require notice to the defendants** or to "anyone other than the U.S. Attorney's Office." United States v. Lopez-Felix, 21 F.3d 1117, at *4 (9th Cir. 1994). *See also* United States v. Gomez, 191 F.3d 1214, 1219 (10th Cir. 1999). While there is case law showing that some U.S. Attorney's Offices routinely choose to forward these notices to defendants, the Court has not found, and Defendants have not shown, that there is an obligation to do so. *See e.g.*, United States v. Fisher, 2010 WL 5488476, at *5 (D. Ariz. 2010), report and recommendation adopted, 2011 WL 11613 (D. Ariz. 2011); United States v. Michael, 2007 WL 9657802, at *2 (D.N.M. 2007). Thus, despite Defendants' arguments to the contrary, the record is devoid of evidence that the destruction of bulk narcotics was the product of improper motivation, malice or bad faith. *See* Garza, 435 F.3d at 75-76.

**B. The destroyed evidence was not exculpatory**

In the absence of bad faith, suppression can only be warranted if the destroyed evidence was "apparently exculpatory." *See* Olszewski, 466 F.3d at 56. Defendants argue that DNA trace testing of the exterior and interior packaging was highly probative and exculpatory, as it would identify who handled the bales of contraband. (Docket No. 616 at 13). Defendants also posit that the because the Government's testing showed that one (1) of the ten

(10) bricks analyzed by the Government did not test positive for cocaine, testing all of the destroyed narcotics would have provided exculpatory evidence. Id. at 5.

The Court agrees with the Government that the presence of DNA on the packaging and additional testing of the purity of the narcotics would serve to *inculpate* rather than *exculpate*. In Illinois v. Fisher, the Supreme Court held cocaine that had been seized and subsequently destroyed by police, in accordance with established procedures before trial, "was plainly the sort of potentially useful evidence … not the material exculpatory evidence[.]" Illinois v. Fisher, 540 U.S. 544, 548 (2004) (quotations omitted). The Supreme Court concluded that "police testing indicated that **the chemical makeup of the substance inculpated, not exculpated,** respondent[.]" Id. (emphasis added). Here, the DEA's Chemical Analysis Report found "[c]ocaine confirmed in 9 units tested of 10 units received indicating, to at least a 95% level of confidence, that at least 90% of the units in the population contain the substance(s)." (Docket No. 650-1). *See e.g.*, Henry v. Page, 223 F.3d 477, 481 (7th Cir. 2000) ("There is nothing in the record to suggest that the substances possessed an exculpatory value that was apparent before they were destroyed. In fact, the only evidence in the record illustrates that the substances were cannabis and cocaine.").

Case 3:20-cr-00382-RAM   Document 805   Filed 12/21/22   Page 12 of 12
Crim. No. 20-382 (5, 6, 18, 24) (RAM)                                    12

Additionally, Courts have routinely determined DNA testing that could have been recovered from destroyed evidence is not exculpatory, let alone *apparently* exculpatory. *See* Hubanks v. Frank, 392 F.3d 926, 931 (7th Cir. 2004) ("A favorable DNA test would not have exonerated [defendant] … As a result, the evidence had no apparent exculpatory value[.]"); United States v. Russell, 604 F. App'x 193, 196 (3d Cir. 2015) ("The existence of a gun would, on its face, be inculpatory, not exculpatory. Nor could the evidence Russell claims he would have gained from the gun—fingerprints and DNA evidence—have actually been exculpatory in this case."); United States v. Sanders, 207 F. App'x 651, 654 (7th Cir. 2006) ("DNA testing of the knife wrappings could not exculpate Sanders; rather, the most that testing would prove is that Sanders obtained the knife from someone else[.]").

## IV. CONCLUSION

For the reasons outlined above, in the absence of either (1) bad faith on behalf of the Government; or (2) the destruction of apparently exculpatory evidence, the Court hereby **DENIES** Defendants' *Motion to Suppress for Destruction of Evidence* at Docket No. 616.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of December 2022.

                                          S/RAÚL M. ARIAS-MARXUACH
                                          UNITED STATES DISTRICT JUDGE